## COMMUNITY HERITAGE SENIOR HOUSING

1555 THIRD STREET
RICHMOND, CA 94801
OFFICE (510) 233-0501   FAX (510)235-9086

# FAX

To: Judondi Bolden   From: Mary Green-Levy
Fax: 1-888-536-9775   Pages: 14
Phone: (510)834-8263   Date: 06/28/2007
Re: James Muhammad   CC:
    #318

☒ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply

1.) Lease
2.) 10 day notice and more documents

Appendix 19d

## 202 PRAC LEASE

### Supportive Housing for the Elderly

This agreement made and entered into this _____**First**_____ day of _____**January**_____, 20**03**, between _____**Community Heritage Senior**_____, as LANDLORD, and _____James Muhammad_____, as TENANT.

WITNESSETH:

WHEREAS, the LANDLORD is the Mortgagor under a Mortgage covering the project in which the hereinafter described unit is situated, which secures a capital advance made by the Secretary of Housing and Urban Development (HUD) (hereinafter "Secretary") pursuant to Section 202 of the Housing Act of 1959, as amended, and

WHEREAS, the LANDLORD has entered into a Project Rental Assistance Contract (PRAC) with the Secretary.

WHEREAS, pursuant to a Regulatory Agreement entered into between the LANDLORD and the Secretary, the LANDLORD has agreed to limit occupancy of the project to elderly families and individuals as defined in Section 202 of the Housing Act of 1959, as amended, and applicable HUD regulations under criteria for eligibility of TENANTS for admission to assisted units and conditions of continued occupancy in accordance with the terms and provisions of the PRAC Contract, and

NOW THEREFORE,

   1. The LANDLORD leases to the TENANT, and the TENANT leases from the LANDLORD dwelling unit in the project known as **Community Heritage Senior** for a term of , commencing on the __1st__ day of __January__, 20__03__, and ending on the __31__ day of __January__, 20__05__

   _____ Initial-Manager
   _____ Initial-Resident

   2. The total rent (Contract Rent) shall be $___411.00___ per month.

   3. The total rent specified in Paragraph 2, above, shall include the following utilities:

   _____Water_____          _____Garbage_____

   (If the total rent includes all utilities, enter "ALL"; where TENANTS pay some or all utilities, enter the following additional paragraph as 3a.)

   The total rent stipulated herein does not include the cost of the following utility service(s), for which the Utility allowance is $___78.00___.

   _____Gas_____            _____Electric_____

Charges for such service(s) is/are to be paid directly by the TENANT to the utility company/companies providing such service(s). If the Utility Allowance exceeds the required TENANT's share of the total housing expense per HUD-approved schedule and criteria, the LANDLORD shall pay the TENANT the amount of such excess on behalf of the Government upon receipt of funds from HUD for that purpose.

    4. Of the total rent, $ __See 50059__ shall be payable by or at the direction of HUD as project rental assistance payments on behalf of the TENANT, and $ __See 50059__ shall be payable by the TENANT. These amounts shall be subject to change by reason of changes in HUD's requirements, changes in the TENANT's family income, family composition, or extent of exceptional medical or other unusual expenses in accordance with HUD-established schedules and criteria; or by reason of adjustment by HUD of any applicable Utility Allowance. Any such change shall be effective as of the date stated in a Notice to the TENANT.

    5. The TENANT"S share of the rent shall be due and payable on or before the first day of each month at **1555 Third St., Nr. Richmond, CA 94801** to the LANDLORD, or to such other person or persons or at such places as the LANDLORD may from time to time designate in writing.

    6. A security deposit in an amount equal to one month's total tenant payment or $50, whichever is greater, shall be required at the time of execution of this Agreement. Accordingly, TENANT hereby makes a deposit of $ _198.00_ against any damage except reasonable wear done to the premises by the TENANT, his/her family, guests, or agents, and agrees to pay when billed the full amount of any such damage in order that the deposit will remain intact. Upon termination of this Lease, the deposit is to be refunded to the TENANT or to be applied to any such damage or any rent delinquency. The LANDLORD shall comply with all State and local laws regarding interest payments on security deposits.

    7. The LANDLORD shall not discriminate against the TENANT in the provision of services or in any other manner on the grounds of race, color, creed, religion, sex, familial status, national origin, or disability.

    8. Unless terminated or modified as provided herein, this Agreement shall be automatically renewed for successive terms of one month each at the aforesaid rental, subject to adjustment as herein provided.

        (a) The TENANT may terminate this Agreement at the end of the initial term or any successive term by giving 30 days written notice in advance to the LANDLORD. Whenever the LANDLORD has been in material noncompliance with this Agreement, the TENANT may in accordance with State law terminate this Agreement by so advising the LANDLORD in writing.

        (b) The LANDLORD's right to terminate this Agreement is governed by the regulation of the Secretary at 24 CFR 891.430 and 24 CFR Part 247 (herein referred to as the HUD Regulation). The HUD Regulation provides that the LANDLORD may terminate this Agreement only under the following circumstances:

            (1) The LANDLORD may terminate, effective at the end of the initial term or any successive term, by giving the TENANT notification in the manner prescribed in paragraph (a) below that the term of this

Agreement is not renewed and this Agreement is accordingly terminated. This termination must be based upon either material noncompliance with this Agreement, material failure to carry out obligations under any State landlord or tenant act, or criminal activity that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises-, any criminal activity that threatens the health or safety of any on-site property management staff responsible for managing the premises; or any drug-related criminal activity on or near such premises, engaged in by a resident, any member of the resident's household or other person under the resident's control; or other good cause. When the termination of the tenancy is based on other good cause, the termination notice shall so state, and the tenancy shall terminate at the end of a term and in accordance with the termination provisions of this Agreement, but in no case earlier than 30 days after receipt by the TENANT of the notice. Where the termination notice is based on material noncompliance with this Agreement or material failure to carry out obligations under a State landlord and tenant act, the time of service shall be in accordance with the previous sentence or State law, whichever is later.

      (2) Notwithstanding subparagraph (1), whenever the TENANT has been in material noncompliance with this Agreement, the LANDLORD may, in accordance with State law and the HUD Regulation, terminate this Agreement by notifying the TENANT in the manner prescribed in paragraph (g) below.

      (c) If the TENANT does not vacate the premises on the effective date of the termination of this Agreement, the LANDLORD may pursue all judicial remedies under State or local law for the eviction of the TENANT, and in accordance with the requirements in the HUD Regulation.

      (d) The term "material noncompliance with this Agreement" shall, in the case of the TENANT, include (1) one or more substantial violations of this Agreement, (2) repeated minor violations of this Agreement which disrupt the livability of the project, adversely affect the health or safety of any person or the right of any tenant to the quiet enjoyment of the leased premises and related project facilities, interfere with the management of the project or have an adverse financial effect on the project, (3) failure of the TENANT to timely supply all required information on the income and composition, or eligibility factors of the TENANT household (including failure to meet the disclosure and verification requirements for Social Security Numbers, as provided by 24 CFR Part 5, or knowingly providing incomplete or inaccurate information). Nonpayment of rent or any other financial obligation due under this Agreement (including any portion thereof) beyond any grace period permitted under State law shall constitute a substantial violation. The payment of rent or any other financial obligation due under this Agreement after the due date but within any grace period permitted under State law shall constitute a minor violation.

      (e) The conduct of the TENANT cannot be deemed other good cause unless the LANDLORD has given the TENANT prior notice that said conduct shall henceforth constitute a basis for termination of this Agreement. Said notice shall be served on the TENANT in the manner prescribed in paragraph (g) below.

(f) The LANDLORD's determination to terminate this Agreement shall be in writing and shall (1) state that the Agreement is terminated on a date specified therein, (2) state the reasons for the LANDLORD's action with enough specificity so as to enable the TENANT to prepare a defense, (3) advise the TENANT that if he or she remains in the leased unit on the date specified for termination, the LANDLORD may seek to enforce the termination only by bringing a judicial action at which time the TENANT may present a defense, and (4) be served on the TENANT in the manner prescribed by paragraph (g) below.

(g) The LANDLORD's termination notice shall be accomplished by (1) sending a letter by first class mail, properly stamped and addressed, to the TENANT at his/her address at the project, with a proper return address, and (2) serving a copy of said notice on any adult person answering the door at the leased dwelling unit, or if no adult responds, by placing the notice under or through the door, if possible, or else by affixing the notice to the door. Service shall not be deemed effective until both notices provided for herein have been accomplished. The date on which the notice shall be deemed to be received by the TENANT shall be the date on which the first class letter provided for in clause (1) herein is mailed, or the date on which the notice provided for in clause (2) is properly given, whichever is later.

(h) The LANDLORD may, with the prior approval of HUD, modify the terms and conditions of the Agreement, effective at the end of the initial term or a successive term, by serving an appropriate notice on the TENANT, together with the tender of a revised Agreement or an addendum revising the existing Agreement. Any increase in rent shall in all cases be governed by **24 CFR Part 245**, and other applicable HUD regulations. This notice and tender shall be served on the TENANT (as defined in paragraph (g)) at least 30 days prior to the last date on which the TENANT has the right to terminate the tenancy without being bound by the codified terms and conditions. The TENANT may accept it by executing the tendered revised Agreement or addendum, or may reject it by giving the LANDLORD written notice at least 30 days prior to its effective date that he/she intends to terminate the tenancy. The TENANT's termination notice shall be accomplished by sending a letter by first class mail, properly stamped and addressed to the LANDLORD at his/her address.

(i) The LANDLORD may terminate this Agreement for the following reasons:

1. drug related criminal activity engaged in on or near the premises, by any TENANT, household member, or guest, and any such activity engaged in on the premises by any other person under the tenant's control;

2. determination made by the LANDLORD that a household member is illegally using a drug;

3. determination made by the LANDLORD that a pattern of illegal use of a drug interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents;

4. criminal activity by a tenant, any member of the TENANT'S household, a guest or another person under the TENANT'S control:

        (a) that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents (including property management staff residing on the premises); or

        (b) that threatens the health, safety, or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises;

        5. if the TENANT is fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, that is a felony under the laws of the place from which the individual flees, or that in the case of the State of New Jersey, is a high misdemeanor; or

        6. if the TENANT is violating a condition of probation or parole under Federal or State law;

        7. determination made by the LANDLORD that a household member's abuse or pattern of abuse of alcohol threatens the health, safety, or right to peaceful enjoyment of the premises by other residents;

        8. if the LANDLORD determines that the tenant, any member of the TENANT'S household, a guest or another person under the TENANT'S control has engaged in criminal activity, regardless of whether the tenant, any member of the tenant's household, a guest or another person under the tenant's control has been arrested or convicted for such activity.

    9.   TENANT agrees that the family income, family composition and other eligibility requirements shall be deemed substantial and material obligations of his/her tenancy with respect to the amount of rental he/she will be obligated to pay and his/her right of occupancy, and that a recertification of income shall be made to the LANDLORD annually from the date of this lease in accordance with HUD regulations and requirements.

    10.  TENANT agrees that the TENANT's share of the monthly rental payment is subject to adjustment by the LANDLORD to reflect income changes which are disclosed on any of TENANT's recertification of income, and TENANT agrees to be bound by such adjustment. LANDLORD agrees to give 30 days written notice of any such adjustment to the TENANT, by an addendum to be made a part of this lease, stating the amount of the adjusted monthly rental which the TENANT will be required to pay.

    11.  The TENANT shall not assign this lease, sublet the premises, give accommodation to any roomers or lodgers, or permit the use of the premises for any purpose other than as a private dwelling solely for the TENANT and his/her family. The TENANT agrees to reside in this unit and agrees that this unit shall be the TENANT's and his/her family's only place of residence.

    12.  TENANT agrees to pay the LANDLORD any rental which should have been paid but for (a) TENANT's misrepresentation in his/her initial income certification or recertification, or in any other information furnished to the LANDLORD or (b) TENANT's failure to supply income recertification when required or to supply information requested by the LANDLORD.

13. TENANT for himself/herself and his/her heirs, executors and administrators agrees as follows:

(a) To pay the rent herein stated promptly when due, without any deductions whatsoever, and without any obligation on the part of the LANDLORD to make any demand for the same;

(b) To keep the premises in a clean and sanitary condition, and to comply with all obligations imposed upon TENANT under applicable provisions of building and housing codes materially affecting health and safety with respect to said premises and appurtenances, and to save the LANDLORD harmless from all fines, penalties and costs for violations or noncompliance by TENANT with any of said laws, requirements or regulations, and from all liability arising out of any such violations or noncompliance.

(c) Not to use premises for any purpose deemed hazardous by insurance companies carrying insurance thereon;

(d) That if any damage to the property shall be caused by his/her acts or neglect, the TENANT shall forthwith repair such damage at his/her own expense, and should the TENANT fall or refuse to make such repairs within a reasonable time after the occurrence of such damage, the LANDLORD may, at his/her option, make such repairs and charge the cost thereof to the TENANT, and the TENANT shall thereupon reimburse the LANDLORD for the total cost of the damages so caused;

(e) To permit the LANDLORD, or his/her agents, or any representative of any holder of a mortgage on the property, or when authorized by the LANDLORD, the employees of any contractor, utility company, municipal agency or others, to enter the premises for the purpose of making reasonable inspections and repairs and replacements"

(f) Not to install a washing machine, clothes dryer, or air conditioning unit in the apartment without the prior approval of the LANDLORD-, and

(g) To permit the LANDLORD or his/her agents to bring appropriate legal action in the event of a breach or threatened breach by the TENANT of any of the covenants or provisions of this lease.

14. The TENANT is permitted to keep common household pets in his/her dwelling unit(subject to the provisions in 24 CFR Part 5 Subpart C) and the pet rules promulgated under 24 CFR 5.315). Any pet rules promulgated by the LANDLORD are attached hereto and incorporated hereby. The TENANT agrees to comply with these rules. A violation of these rules may be grounds for removal of the pet or termination of the TENANT's (pet owner's) tenancy (or both), in accordance with the provisions of 24 CFR Part 5, Subpart C and applicable regulations and State or local law. These regulations include 24 CFR Part 247 (Evictions From Certain Subsidized and HUD-Owned Projects) and provisions governing the termination of tenancy under the Project Rental Assistance Contract.

Note: The Part 5 Pet Rules do not apply to an animal used by a Tenant or visitor that is needed as a reasonable accommodation for the Tenant's or visitor's disability.

[Optional] The LANDLORD may after reasonable notice to the TENANT and during reasonable hours, enter and inspect the premises. Entry and inspection is permitted only if the LANDLORD has received a signed, written complaint alleging (or the LANDLORD has reasonable grounds to believe) that the conduct or condition of a pet in the dwelling unit constitutes, under applicable State or local law, a nuisance or a threat to the health or safety of the occupants of the project or other persons in the community where the project is located.

If there is not State or local authority (or designated agent of such an authority) authorized under applicable State or local law to remove a pet that becomes vicious, displays symptoms of severe illness, or demonstrates other behavior that constitutes an immediate threat to the health or safety of the tenancy as a whole, the LANDLORD may enter the premises (if necessary), remove the pet, and take such action with respect to the pet as may be permissible under State and local law, which may include placing it in a facility that will provide care and shelter for a period not to exceed 30 days. The LANDLORD shall enter the premises and remove the pet or take such other permissible action only if the LANDLORD requests the TENANT (pet owner) to remove the pet from the project immediately, and the TENANT (pet owner) refuses to do so, or if the LANDLORD is unable to contact the TENANT (pet owner) to make a removal request. The cost of the animal care facility shall be paid as provided in 24 CFR 5.363.

15. The LANDLORD agrees to comply with the requirement of all applicable Federal, State, and local laws, including health, housing and building codes and to deliver and maintain the premises in safe, sanitary decent condition.

16. The TENANT, by the execution of this Agreement, admits that the dwelling unit described herein has been inspected by him/her and meets with his/her approval. The TENANT acknowledges hereby that said premises have been satisfactorily completed and that the LANDLORD will not be required to repaint, replaster, or otherwise perform any other work, labor, or service which it has already performed for the TENANT. The TENANT admits that he/she has inspected the unit and found it to be in good and tenantable condition, and agrees that at the end of the occupancy hereunder to deliver up and surrender said premises to the LANDLORD in as good condition as when received, reasonable wear and tear excepted.

17. No alteration, addition, or improvements shall be made in or to the premises without the prior consent of the LANDLORD in writing. The LANDORD agrees to provide reasonable accommodation to an otherwise eligible tenant's disability, including making changes to rules, policies, or procedures, and making and paying for structural alterations to a unit or common areas. The Landlord is not required to provide accommodations that constitute a fundamental alteration to the Landlord's program or which would pose a substantial financial and administrative hardship. See the regulations at 24 CFR Part 8. In addition, if a requested structural modification does pose a substantial financial and administrative hardship, the Landlord must then allow the tenant to make and pay for the modification in accordance with the Fair Housing Act.

18. TENANT agrees not to waste utilities furnished by the LANDLORD; not to use utilities or equipment for any improper or unauthorized purpose;

and not to place fixtures, signs, or fences in or about the premises without the prior permission of the LANDLORD in writing. If such permission is obtained, TENANT agrees, upon termination of the lease, to remove any fixtures, signs of fences, at the option of the LANDLORD, without damage to the premises.

19. This Agreement shall be subordinate in respect to any mortgages that are now on or that hereafter may be placed against said premises, and the recording of such mortgage or mortgages shall have preference and precedence and be superior and prior in lien to this Agreement, and the TENANT agrees to execute any such instrument without cost, which may be deemed necessary or desirable to further effect the subordination of this Agreement to any such mortgage or mortgages and a refusal to execute such instruments shall entitle the LANDLORD, or the LANDLORD's assigns and legal representatives to the option of canceling this Agreement without incurring any expense or damage, and the term hereby granted is expressly limited accordingly.

20. Failure of the LANDLORD to insist upon the strict performance of the terms, covenants, agreements and conditions herein contained, or any of them, shall not constitute or be construed as a waiver or relinquishment of the LANDLORD's right thereafter to enforce any such term, covenant, agreement, or condition, but the same shall continue in full force and effect.

21. In return for the TENANT's continued fulfillment of the terms and conditions of this Agreement, the LANDLORD covenants that the TENANT may at all times, while this Agreement remains in effect, have and enjoy for his/her sole use and benefit the above described property.

22. Tenant Income Verification: The TENANT must promptly provide the LANDLORD with any letter or other notice by HUD to a member of the family that provides information concerning the amount or verification of family income in accordance with HUD requirements.

23. Tenants' rights to organize: LANDLORD agrees to allow TENANT organizers to conduct on the property the activities related to the establishment or operation of a TENANT organization set out in accordance with HUD requirements.

24. Interim recertifications:

   a. The TENANT agrees to advise the LANDLORD immediately if any of the following changes occur:

      1. Any household member moves out of the unit.

      2. Any adult member of the household who was reported as unemployed on the most recent certification or recertification obtains employment.

      3. The household's income cumulatively increases by $40 or more a month.

   b. The TENANT may report any decrease in income or any change in other factors considered in calculating the Tenant's rent. Unless the LANDLORD has confirmation that the decrease in income or change in other

factors will last less than one month, the LANDLORD will verify the information and make the appropriate rent reduction. However, if the TENANT'S income will be partially or fully restored within two months, the LANDLORD may delay the certification process until the new income is known, but the rent reduction will be retroactive and LANDLORD may not evict the TENANT for nonpayment of rent due during the period of the reported decrease and the completion of the certification process. The TENANT has thirty days after receiving written notice of any rent due for the above described time period to pay or the LANDLORD can evict for nonpayment of rent.

    c. If the TENANT does not advise the LANDLORD of the interim changes concerning household members or increase in income, the LANDLORD may increase the TENANT'S rent to the contract rent. The LANDLORD may do so only in accordance with the time frames and administrative procedures set forth in HUD's regulations, handbooks and instructions on the administration of multifamily subsidy programs.

    d. The TENANT may request to meet with the LANDLORD to discuss how any change in income or other factors affected his/her rent or assistance payment, if any. If the TENANT requests such a meeting, the LANDLORD agrees to meet with the TENANT and explain how the TENTANT'S rent or assistance payment, if any, was computed.

25. Attachments to the Agreement: The Tenant certifies that he/she has received a copy of the Agreement and the following attachments to the Agreement and understands that these attachments are part of the Agreement.

    a. Attachment No. 1 - Certification and Recertification of Tenant Eligibility. (59 Certification)

    b. Attachment No. 2 - Unit Inspection Report.

    c. Attachment No. 3 - House Rules (if any).

WITNESS:

11/25/02
Date

11-25-02
Date

By: _____ LANDLORD

_____ TENANT
James Muhammad

June 25, 2007

James Karim Muhammad
1555 3rd Street Apt. 318
Richmond, CA 94801

To: North Richmond Senior Housing
Resident Manager, Mary L. Green-King
Project Coordinator, Toni Cummings And HUD
[Federal Housing Commissioner]

Dear Madams and/or Sirs:

    Re: letter dated June 22, 2007 to "(Name of Residents(s) James Karim Muhammad And other occupants 1555 Third Street Apt. #318 (street Address, Apt. No.) Richmond, CA 94801 (City State and Zip Code) TEN-DAY NTICE TO PERFORM COVENANT OR SURRENDER POSSESSION OF PREMISES"

    At 5:55 pm on June 25, 2007, I intercepted the letter attached hereto as exhibit #1 (which is so marked for identification purpose)while it was being inserted into my apartment through a narrow crack at the side of my apartment door. And within five minutes (at 6:00 pm) I had retrieved the letter and was at the office door of Resident Manager, Mary L. Green-King requesting a copy of Section 3 of the House Rules which allegedly state "All apartments must be kept clean and uncluttered to allow easy passage throughout the unit. Flammable materials may not be stored in the units. Management may require the removal of items, newspapers, trash, etc. that are deemed to be a fire or health hazard. Failure to remove trash, newspapers, or clutter on a regular basis, or failure to remove such items when required by management, may result in the material violation of the lease."; but the resident manager, Mary L. Green-King refused to provide me with a copy of the said House Rules upon my request.

    Within five minutes after retrieving Exhibit #1, I told the Resident Manager that I have never signed any agreement fitting that description; and within five minutes after retrieving Exhibit #1, I informed the Resident Manager that Section 3 of the House Rules referred to in Exhibit #1, is unconstitutionally vague in that the Management may be describing as <u>trash newspapers and clutter</u>, papers in my apartment which pertain to my religion (Islam) or/and my legal filings and papers, which I have a constitutional right to retain, and neither she, her immediate employer, Toni Cummings, nor the Federal Housing Commissioner (HUD), who are government officers, have the right to prevent me from possessing and maintaining these items.

    The Resident Manager, Mary L. Green-King all of a sudden pretend that her office hours were at a different time than that particular hour, and that I would have to arrange another time to demand to see Section 3 of the House Rule. I stated that she is fully aware of my demand, and she may comply with my demand by forging a copy of

Section 3 of the House Rules through my door in the same manner which she forged Exhibit #1 through.

As for the particular notice demonstrated in my Exhibit #1, the Resident Manager, Mary L. Green-King, the Coordinator, Toni Cummings, and the Federal Housing Commissioner (HUD) are hereby notified that all papers which I have in my apartment pertain to my religion (Islam) and/or legal documents filed in courts and are necessary for my survival, and I will not part with any of them based upon the notice given in Exhibit #1. Exhibit #1 does not specifically contend that my religious and/or legal papers poses a genuine fire or health hazard; so clearly the Resident manager is attempting to create an excuse to attack me.

I am by law entitled t quiet enjoyment of my apartment. But the Resident Manager, Mary L. Green-King (who is either not a realtor) and therefore not qualified to Manage the 50 unit apartment complex of which I am a tenant) has given an excessive number of 48 hour notices of the landlord's need to enter his apartment for inspection.

Unless there is a plumbing or electrical problem, the landlord creates a nuisance when he or she gives more than one 48 hour notice of need to inspect in a single year. There has been at least three 48 hour notices of the landlord's claimed need to inspect all apartments at 1555 Third Street, Richmond, California in 2007 (which included my apartment (#318); yet, there is and has not been a plumbing or electrical emergency on the 1555 Third Street property. I am entitled to file an action quieting a nuisance against the Resident Manager, and I will do so unless this harassment because of my religion and because of my legal endeavors ends.

Yours very truly

*James Karim Muhammad*
James Karim Muhammad

12:10pm

Muhammed physically threatened management

To me muhammed stated that if we entered his unit he would physically put me on[?]

TO:  (Name of Resident(s) James Muhammad
 And all other occupants
 1555 Third Street Apt., #318 (street Address, Apt. No.)
 Richmond, CA  94801 (City, State and Zip Code)

## TEN-DAY NOTICE TO PERFORM COVENANT
## OR SURRENDER POSSESSION OF PREMISES

Resident in Possession:

 NOTICE IS HEREBY GIVEN that within ten days and pursuant to the agreement by which you hold posession of the above-described premises, you must comply fully with the following specified covenant and correct or change your present conduct/actions as set forth below:

Section 13 of your Lease Agreement states: "Tenant agrees to keep the premises in a clean and sanitary condition, and to comply with all obligations imposed upon TENANT under applicable provisions of building and housing codes materially affecting health and safety with respect to said premises and appurtenances, and to save the LANDLORD harmless from all fines, penalties and cost for violations or non-compliance by TENANT with any of said laws, requirements or regulations, and from all liability arising out of any such violations or noncompliance. Not to use premises for any purpose deemed hazardous by insurance companies carrying insurance thereon; To permit the LANDLORD or his/her agents to bring appropriate legal action in the event of a breach or threatened breach by the TENANT of any of the covenants or provisions of this lease."

Section 3 of the House Rules state: "All apartments must be kept clean and uncluttered to allow easy passage throughout the unit. Flammable materials may not be stored in the units. Management may require the removal of items, newspapers, trash, etc. that are deemed to be a fire or health hazard. Failure to remove trash, newspapers, or clutter on a regular basis, or failure to remove such items when required by management, may result in the material violation of the lease."

DESCRIPTION OF VIOLATION: An inspection of your unit was conducted on Monday June 18, 2007 revealed that you have excessive items such as boxes, sewing machines, newspapers and other trash stored in the unit. The emergency pull cord was blocked by boxes stacked up to the ceiling. There were clothes, shelves, furniture and other articles throughout the entire unit that eliminated our ability to walk freely throughout the unit. All heating vents, livingroom and bedroom windows were blocked.

 You are hereby required, on or before July 2, 2007 and in no event later than ten days from the date of service on you of this notice to perform said covenant fully or to deliver up possession of said premises to the undersigned or legal proceedings will be commenced against you to recover costs and attorneys' fees for the unlawful detention of said premises. The undersigned elects to and does declare a forfeiture of the lease or rental agreement under which you occupy the above premises if the covenant is not performed in full on or before the specified date. You have ten (10) days within which to meet and discuss with the Manager this Notice and the proposed termination of your tenancy. Please be advised that you may only be evicted as a result of a judicial proceeding and if a judicial proceeding for eviction is instituted you may present a defense at the trial.

Dated: June 22, 2007                SIGNED: _Mary J. Green-King_
                                             Property Manager